UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| KELLY J. KOCH, | ) | CIV. 08-4193-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING PLAINTIFF'S |
| | ) | MOTION TO CONSOLIDATE |
| BREG, INC., a California corporation, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Kelly Koch, moves to consolidate this action with *Suhn v. Breg, Inc.*, Civ. 08-4190, under Rule 42(a). Defendant Breg resists Koch's motion. For the reasons expressed below, the court grants Koch's motion to consolidate.

## BACKGROUND

Breg manufactures the Breg Pain Care 3200 pump, commonly referred to as a pain pump. The pain pump was cleared by the FDA for sale to medical professionals for general surgery applications pursuant to the 510(k) process.[1] It uses a drip mechanism that infuses an anesthetic, such as

---

[1] The 510(k) process "imposes a limited form of review on every manufacturer intending to market a new device by requiring it to submit a 'premarket notification' to the FDA[.]" *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 478 (1996). "If the FDA concludes on the basis of the § 510(k) notification that the device is 'substantially equivalent' to a pre-existing device, it can be marketed without further regulatory analysis[.]" *Id.* at 478. The requirements of the 510(k) process are codified at 21 U.S.C. § 360(k). *See generally id.* (recognizing that § 360(k) "is also known as a '§ 510(k) process,' after the number of the section in the original [Medical Device Amendments of 1976] Act").

bupivacaine, at a rate of 4cc's per hour. It also allows the patient to administer a bolus[2] dose of the anesthetic.

On August 8, 2005, Koch underwent arthroscopic surgery of his right shoulder. On December 1, 2005, Suhn underwent arthroscopic surgery of his right shoulder. After the surgeries, the high volume pain pump manufactured by Breg was inserted in both Koch's and Suhn's shoulder's joint space to alleviate their pain. Koch and Suhn were both subsequently diagnosed with glenohumeral chondrolysis.[3] Koch and Suhn brought separate suits against Breg, alleging various strict liability and negligence claims.[4] They now move to consolidate their cases for trial.

## ANALYSIS

The court has the authority to "consolidate the actions" if the "actions before the court involve a common question of law or fact[.]" *See* Fed. R. Civ. P. 42(a)(2). The authority to consolidate cases under Rule 42(a) " 'should be prudently employed as a valuable and important tool of judicial administration, invoked to expedite trial and eliminate unnecessary repetition

---

[2] A bolus is defined as a "single, relatively large quantity of a substance[.]" *Stedman's Medical Dictionary* 239 (28th ed. 2006).

[3] Glenohumeral means "[r]elating to the glenoid cavity and the humerus." *Stedman's Medical Dictionary* at 811. Chondrolysis is the "[d]isappearance of articular cartilage as the result of disintegration or dissolution of the cartilage matrix and cells." *Id.* at 369.

[4] The attorneys and the claims are the same in both cases.

2

and confusion.'" *Bendzak v. Midland Nat'l Life Ins. Co.*, 240 F.R.D. 449, 450 (S.D. Iowa 2007) (quoting *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999)). Consolidation serves to "avoid unnecessary cost or delay." *Id.* at 450. It is not appropriate to consolidate, however, "if it leads to inefficiency, inconvenience, or unfair prejudice to a party." *E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998). The court has broad discretion in determining whether to consolidate cases containing a common question of fact or law. *See Enter. Bank v. Saettele*, 21 F.3d 233, 235 (8th Cir. 1994) ("The district court's broad discretion in ordering the consolidation of matters is not unbounded, and we will reverse a district court's decision to consolidate for an abuse of discretion." (citation omitted)).

There are several common questions of fact at issue in both cases. First, there is an issue of fact as to whether the pain pump can even cause the destruction or loss of cartilage. Second, there is an issue of fact as to whether Breg knew, or should have known, that the use of its pain pump could result in the destruction or loss of cartilage in a patient's shoulder. Finally, there is an issue of fact as to when, if ever, Breg knew or should have known that the use of its pain pump could result in the destruction or loss of cartilage in a patient's shoulder. These common questions of fact will undoubtedly be disputed at trial. Thus, the court finds that there are

"common question[s] of law or fact" that support consolidating these cases for trial. *See* Fed. R. Civ. P. 42(a).

There are also several witnesses who will be called to testify in both trials if the cases are separately tried. For example, Dr. Looby, the surgeon for Koch and Suhn, would testify in both cases. Breg's causation expert, Dr. Petty, would testify in both cases as well. Many of the same experts on the scientific literature and general causation would likely testify in both cases if the trials were separately tried, and those experts would undoubtably offer substantially the same testimony in both cases. *See Blood v. Givaudan Flavors Corp.*, 2009 WL 982022, at *7 (N.D. Iowa Apr. 10, 2009) (recognizing that the inevitable testimonial "overlap" in separate trials supported consolidation). Moreover, both cases have completed discovery and are ready for trial. *Cf. Fin-Ag, Inc. v. NAU Country Ins. Co.*, 2009 WL 44479, at *3 (D.S.D. Jan. 6, 2009) (refusing to consolidate partly because the two cases were "at much different stages of preparation and litigation"). The interests of judicial economy and convenience therefore support consolidation. *See Blood*, 2009 WL 982022, at *7-8 ("Thus, it is clear that given the near identical circumstances of these two cases, the savings to the parties, witnesses, and judicial resources that will result from consolidation will be enormous."); *Bendzak*, 240 F.R.D. at 450 (consolidating two cases because it "would avoid unnecessary cost, delay, repetition, confusion, and expedite trial").

Breg argues that there are factual differences between Koch's case and Suhn's case that demonstrate the need for separate trials. Specifically, Breg argues that Koch's medical history before the surgery in question, his medical history after the surgery, and his damages are different from Suhn's. According to Breg, these differences will unduly confuse the jury.

"While each of [p]laintiffs' specific medical conditions may be different, those differences and their significance can be explained to a jury and easily understood." *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2010 WL 797273, at *3 (M.D. Ga. Mar. 3, 2010). Moreover, there are only two plaintiffs in this case. The unrelated evidence can therefore "be presented to a jury in a manner that is not confusing" by using proper questioning techniques and identification of exhibits. *See id.* at *4 (explaining that any risk of confusion is minimized "so long as the evidence is introduced in an organized fashion"). Thus, the court finds that any risk of confusion is minimal and does not require separate trials. *See Mary Ellen Enters. v. Camex, Inc.*, 68 F.3d 1065, 1073 (8th Cir. 1995) (rejecting the defendant's argument that separate trials were necessary because "the complicated evidence on copyright damages confused the jury").

Breg also argues that if the cases are consolidated, it will be unfairly prejudiced with regard to the issue of specific causation. Breg argues that the jury will be more likely to conclude that Breg's pain pump caused plaintiffs'

5

injuries if their cases are consolidated because the jury will be allowed to consider evidence from both plaintiffs.

As the United States Supreme Court presumed in the context of a criminal case, "jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions . . . and strive to understand, make sense of, and follow the instructions given them." *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985). Jurors will presumably do the same in a civil trial. *See CSX Transp., Inc. v. Hensley*, 129 S. Ct. 2139, 2141 (2009) ("The jury system is premised on the idea that rationality and careful regard for the court's instructions will confine and exclude jurors' raw emotions. . . . [A]s in all cases, juries are presumed to follow the court's instructions." (citation omitted)). And the court shares the view articulated by the District Court of Iowa, "juries are composed of prudent, thoughtful, and intelligent individuals[.]" *Blood*, 2009 WL 982022, at *5. Therefore, any potential for unfair prejudice to Breg on the issue of specific causation can be limited by a proper instruction to the jury that the issue of whether Breg's pain pump caused Koch's chondrolysis is to be determined separately from the issue of whether Breg's pain pump caused Suhn's chondrolysis. *See Mary Ellen Enters.*, 68 F.3d at 1073 (affirming the trial court's decision to consolidate where "the court instructed the jury that the trial involved two separate

actions, and the jury verdict form clearly differentiated between the two actions").

There are numerous common questions of fact that support consolidation. Moreover, the interests of judicial economy and convenience support consolidation because both cases will rely on many of the same witnesses and testimony evidence. Finally, the potential for confusion is minimal, and any potential for unfair prejudice with regard to specific causation can be avoided with proper jury instructions. Accordingly, it is

ORDERED that *Suhn v. Breg, Inc.*, Civ. 08-4190, and *Koch v. Breg, Inc.*, Civ. 08-4193, are consolidated under *Suhn v. Breg, Inc.*, Civ. 08-4190.

IT IS FURTHER ORDERED that future filings be filed under *Suhn v. Breg, Inc.*, Civ. 08-4190.

Dated April 20, 2011.

                              BY THE COURT:

                              /s/ *Karen E. Schreier*
                              KAREN E. SCHREIER
                              CHIEF JUDGE